**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**

| | |
|---|---|
| ARCHY BEAUGE, individually and on behalf of all others similarly situated, | |
| *Plaintiff*, | **Civil Action No.** 5:25-cv-00051 |
| vs. | |
| BMW OF NORTH AMERICA, LLC, | |
| *Defendant*. | |

## CLASS ACTION COMPLAINT

Plaintiff, Archy Beauge ("Plaintiff"), individually and on behalf of all others similarly situated, respectfully submits the following for his Class Action Complaint against Defendant BMW of North America. ("BMW" or "Defendant"). Plaintiff makes the following allegations, except as to allegations specifically pertaining to Plaintiff, upon information and belief based on, among other things, the investigation of counsel, and review of public documents.

## PRELIMINARY STATEMENT

1.      Vehicle manufacturers have certain basic rules and procedures that must be followed. When a vehicle manufacturer sells a vehicle, it has a duty to ensure that the vehicle functions properly and safely for its advertised use and is free from defects. When a vehicle manufacturer discovers a defect, it must explicitly disclose the defect and make it right or cease selling the vehicle. When a vehicle manufacturer provides a warranty, it must stand by that warranty. This case arises from Defendant's breach of these listed duties and rules.

2.      Plaintiff brings this action on behalf of himself, and all similarly situated persons who purchased or leased any BMW model that was recalled and manufactured from the years 2012

1

through 2018 ("Class Vehicles"). The recall applies to the following BMW models[1]:

| MAKE | MODEL | YEARS |
|---|---|---|
| BMW | X1 sDrive28i, X1 xDrive28i | 2012-2015 |
| BMW | Z4 sDrive28i | 2012-2016 |
| BMW | 528i, 528i xDrive | 2012-2016 |
| BMW | X5 xDrive40e | 2016-2018 |
| BMW | 2 Series Coupe (228i, 228xi) | 2014-2016 |
| BMW | 2 Series Convertible (228i, 228xi) | 2015-2016 |
| BMW | X3 sDrive28i, X3 xDrive28i | 2013-2017 |
| BMW | X4 xDrive28i | 2015-2018 |
| BMW | 3 Series Sedan (328i, 328xi) | 2012-2016 |
| BMW | 3 Series Sportswagon (328i, 328xi) | 2014-2015 |
| BMW | 4 Series Coupe (428i, 428i xDrive) | 2014-2016 |
| BMW | 4 Series Convertible (428i, 428i xDrive) | 2014-2016 |
| BMW | 328xi Gran Turismo | 2014-2016 |
| BMW | 4 Series Gran Coupe (428i, 428xi) | 2015-2016 |

3.     This action is brought to remedy various violations of law in connection with Defendant's manufacture, marketing, advertising, selling, warranting, and servicing of the Class Vehicles.

4.     Specifically, "blowby-liquid from the positive crankcase ventilation system may collect on the intake air hose," and eventually "drip onto the plug connector," potentially seeping in, causing an electrical shortage, which could increase the risk of a thermal event and, potentially,

---

[1] https://static.nhtsa.gov/odi/rcl/2024/RCLRPT-24V608-7082.PDF (last accessed on February 20, 2025).

a fire.[2]

5.    On August 20, 2024, BMW recalled 720,796 of the above referenced Class Vehicles ("Recall").[3]

6.    The allegations herein are based on personal knowledge as to Plaintiff's own experience and are made as to other matters based on an investigation by counsel, including analysis of publicly available information.

## JURISDICTION AND VENUE

7.    This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, the relevant portion of which is codified at 28 U.S.C. §1332(d). The aggregated claims of the individual Class Members exceed the sum or value of $5,000,000, exclusive of interests and costs, and this is a class action in which more than two-thirds of the proposed Plaintiff Class, on the one hand, and Defendant, on the other, are citizens of different states.

8.    This Court has personal jurisdiction over Defendant because Defendant has purposefully availed itself to this District's jurisdiction and authority, given Defendant's minimum contacts within this District through Defendant's extensive marketing, advertising, and sale of Class Vehicles throughout this District.

9.    Venue is proper in this District under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District, given that Defendant sells and distributes their vehicles throughout the United States and within this District.

## PARTIES

10.    Archy Beauge is a citizen of the State of North Carolina and resides in Mooresville.

---

[2] https://www.cbsnews.com/news/bmw-recall-720000-vehicles-electric-water-pump-fire-risk-2024/ (last accessed on February 20, 2025).
[3] *Id.*

Moorseville is located within Iredell County, North Carolina.

11.    Plaintiff purchased a 2013 BMW 328i Sedan in December of 2018.

12.    Based on BMW's active and persistent promotions touting the quality of its vehicles and his admiration of BMW vehicles, Plaintiff considered BMW a quality company with a strong reputation for producing reliable and safe vehicles.

13.    In addition to BMW's reputation through its marketing and promotion, Plaintiff decided on the 2013 BMW 328i because he believed it was a high-quality vehicle after a salesman convinced his that the vehicle was safe, highly reliable and came with great technological features.

14.    Since purchasing his 2013 BMW 328i, Plaintiff has only taken the vehicle to the same dealership, Hendrick BMW Certified Pre-Owned South Charlotte, North Carolina, for its routine maintenance as recommended by both the vehicle alert system and the Service Department.

15.    However, through Plaintiff's consistent visits to Hendrick BMW of South Charlotte Service Department, he has never been told of any recalls or defects related to the improperly sealed electrical connector on the water pump. Plaintiff was never informed that water could reach the plug connector, causing an electrical shortage, which could increase the risk of a thermal event and cause a fire.

16.    Defendant is a Delaware corporation, with its principal place of business located at 300 Chestnut Ridge Road, Woodcliff Lake, NJ 07677.  Defendant is a corporation organized and in existence under the laws of the State of New Jersey.

17.    Defendant designs, manufactures, markets, distributes, services, repairs, sells, and leases vehicles, including the Class Vehicles, nationwide and in the state of North Carolina. Defendant is the warrantor and distributor of the Class Vehicles in the United States.

18.    Defendant, through various entities, markets, distributes, warrants, and sells BMW

4

automobiles and parts for those automobiles, including the Class Vehicles, in multiple locations across the United States, including the states of North Carolina.

## FACTUAL ALLEGATIONS

19.     As discussed earlier and in more detail below, the Class Vehicles contain a design defect that causes a serious safety concern. The design defect with the Class Vehicles is contained in the improperly sealed electrical connector on the water pump.

20.     In more detail, the Class Vehicle's problem stems from a potential short circuit on a connector, occurring under the hood and originating from the water pump, that could cause a fire.[4]

21.     On March 20, 2022, Plaintiff's car did in fact catch in fire while he was driving it and Plaintiff was forced to evacuate the vehicle in an intersection and wait for the fire department to come and extinguish the fire that had ignited in his engine.

22.     As demonstrated by the facts above, there is no foreseeable reason for any of the individual parts to fail. Rather, the failure is caused by Defendant's improper engineering, design, or manufacturing.

23.     Over 700,000 of the Class Vehicles with a defective electrical connector on the water pump have been sold in America.[5]

24.     The result of Defendant's Recall, which includes a free replacement of the water pump and plug connector and the installation of a protective shield[6], will cost Plaintiff hours of his time.

25.     Even if one was to presume that the Recall was effective and offered a true fix,

---

[4] https://www.motor1.com/news/730779/bmw-recalls-720000-cars-fire-risk/ (last accessed on August 22, 2024)
[5] https://www.newsbreak.com/cbs-news-510078/3567896591371-bmw-recalls-more-than-720000-cars-because-electric-water-pump-issue?noAds=1&_f=app_share&s=i3 (last accessed on August 22, 2024)
[6] Id.

which is by no means a fair presumption, Plaintiff is still burdened with a vehicle that has been devalued by Defendant's actions because the value of a car with a known history of a defective electrical connector on the water pump and a potential fire hazard is worth much less than a car with properly working electrical connector on the water pump, or at least not having a history of defects with risks of the car catching on fire.

26.     In addition to the sheer amount of time spent in repair, Plaintiff, like every other Class Member, must spend time and money to remedy the defect.  For Plaintiff, this service center is Hendrick BMW of South Charlotte located at 9029 South Blvd, Charlotte, NC 28273 and his commute begins at his home at 140 Tennessee Cir, Mooresville, North Carolina 28117.  Plaintiff's repair-related commute is roughly a 52.5-mile trip, which is about 55 minutes one way.

27.     In addition to the sheer amount of time spent in repairing his vehicle, Plaintiff is faced with another difficult expense, the price of towing his vehicle. The average cost of towing, per mile, is $4.75 per mile.[7]  Given Plaintiff's roughly 52.5-mile commute, this cost amounts to $249.38, which Plaintiff must pay for his own Class Vehicle to be safely repaired.

28.     Given the additional time it takes for a tow truck to arrive, roughly thirty minutes, Plaintiff would spend more than an hour on his vehicle, unless of course, one is to assume that Plaintiff drives his potentially flammable Class Vehicle to the dealership.

29.     In all, Defendant's Recall amounts to tens of thousands of hours and dollars needlessly taken from Plaintiff and other Class Vehicle owners.

## CLASS ACTION ALLEGATIONS

30.     Plaintiff brings this action on behalf of himself and as a class action, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the class and subclass are defined as

---

[7] https://www.thezebra.com/resources/driving/how-much-does-towing-a-car-cost/ (last accessed on December 16, 2024).

follows:

> **Nationwide Class:** All persons in the United States who purchased or leased the following recalled BMW Models: X1 sDrive28i, X1 xDrive28i manufactured from 2012 through 2015; Z4 sDrive28i manufactured from 2012 through 2016; 528i, 528i xDrive manufactured from 2012 through 2016; X5 xDrive40e manufactured from 2016 through 2018; 2 Series Coupe (228i, 228xi) manufactured from 2014 through 2016; 2 Series Convertible (228i, 228xi) manufactured from 2014 through 2016; X3 sDrive28i, X3 xDrive28i manufactured from 2013 through 2017; X4 xDrive28i manufactured from 2015 through 2018; 3 Series Sedan (328i, 328xi) manufactured from 2012 through 2016; 3 Series Sportswagon (328i, 328xi) manufactured from 2014 through 2015; 4 Series Coupe (428i, 428i xDrive) manufactured from 2014 through 2016; 4 Series Convertible (428i, 428i xDrive) manufactured from 2014 through 2016; 328xi Gran Turismo manufactured from 2014 through 2016; and 4 Series Gran Coupe (428i, 428xi) manufactured from 2015 through 2016.

> **North Carolina Subclass:** All persons from North Carolina who purchased or leased the following recalled BMW Models: X1 sDrive28i, X1 xDrive28i manufactured from 2012 through 2015; Z4 sDrive28i manufactured from 2012 through 2016; 528i, 528i xDrive manufactured from 2012 through 2016; X5 xDrive40e manufactured from 2016 through 2018; 2 Series Coupe (228i, 228xi) manufactured from 2014 through 2016; 2 Series Convertible (228i, 228xi) manufactured from 2014 through 2016; X3 sDrive28i, X3 xDrive28i manufactured from 2013 through 2017; X4 xDrive28i manufactured from 2015 through 2018; 3 Series Sedan (328i, 328xi) manufactured from 2012 through 2016; 3 Series Sportswagon (328i, 328xi) manufactured from 2014 through 2015; 4 Series Coupe (428i, 428i xDrive) manufactured from 2014 through 2016; 4 Series Convertible (428i, 428i xDrive) manufactured from 2014 through 2016; 328xi Gran Turismo manufactured from 2014 through 2016; and 4 Series Gran Coupe (428i, 428xi) manufactured from 2015 through 2016.

31.     Together, the Nationwide Class, and North Carolina Subclass will be collectively referred to as the "Class" or "Classes". Members of these Classes will be referred to as "Class Members".

32.     Plaintiff qualifies as a member of each of the proposed classes in the preceding paragraphs.

33.     Excluded from each of the putative classes are any person who falls within the definitions if the person is: (i) an employee or independent contractor of Defendant; (ii) a relative of an employee or independent contractor of Defendant; (iii) an employee of the Court where this

action is pending

34.    Plaintiff reserves the right to amend the Class definitions if further investigation and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

35.    The particular members of the (i) Nationwide Class, and (ii) North Carolina Subclass are capable of being described without difficult managerial or administrative problems. The members of the putative classes are also readily identifiable from the information and records in the possession or control of Defendant or its affiliates and agents and from public records.

36.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

37.    The Proposed Classes are so numerous that the joinder of all members is impracticable.

38.    This action has been brought and may be properly maintained on behalf of the classes proposed herein under Federal Rule of Civil Procedure 23.

39.    **Numerosity: Fed. R. Civ. P. 23(a)(1) –** Upon information and belief, the Classes are so numerous that the joinder of all members is impracticable. While the exact number and identities of individual members of the Classes are unknown at this time, such information is in the sole possession of Defendant and obtainable by Plaintiff only through the discovery process. Members of the Classes may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, Electronic Mail, internet postings, social media, and/or published notice.

40.    **Typicality: Fed R. Civ. P. 23(a)(3) –** Plaintiff's claims are typical of the claims of

the Classes because Plaintiff purchased a Class Vehicle that contained the defective electrical connector on the water pump found in all other Class Vehicles.

41.    **Adequacy: Fed. R. Civ. P. 23(a)(4) –** Plaintiff is an adequate class representative because his interests do not conflict with the interests of the Classes he seeks to represent.  Plaintiff has retained counsel competent and highly experienced in complex and class action litigation, and he intends to prosecute this action vigorously.  The interests of the Classes will be fairly and adequately protected by Plaintiff and his counsel.

42.    **Predominance and Superiority: Fed. R. Civ. P. 23(b)(3) –** A class action is superior to all other available means for the fair and efficient adjudication of the claims of Plaintiff and Class Members and questions of law and fact common to all Class Members predominate over questions affecting only individual Class Members. Class Members can be readily identified and notified based on, inter alia, Defendant's business records or other sources including those from the state of North Carolina.

43.    **Common Questions of Fact and Law: Fed. R. Civ. P. 23(b)(4) –** Common Questions of law and fact exist as to all members of the Classes.  These questions predominate over the questions affecting individual Class Members. These common legal and factual questions include, but are not limited to:

  a.  Whether Class Vehicles contain the alleged defective electrical connector on the water pump;

  b.  Whether the defective electrical connector on the water pump would be considered material by a reasonable consumer;

  c.  Whether the defective electrical connector on the water pump would constitute an unreasonable safety risk;

  d.  Whether Defendant had a duty to disclose the defect contained in the electrical connector on the water pump to Plaintiff and other Class Members;

9

e. Whether Defendant knew or reasonably should have known of the defective electrical connector on the water pump before it sold and leased Class Vehicles to Plaintiff and Class Members;

f. Whether defective electrical connector on the water pump has diminihed the value of the Class Vehicles;

g. Whether the defective electrical connector on the water pump is capable of being repaired;

h. Whether Defendant should be declared financially responsible for notifying all Class Members of the problems with the Class Vehicles and for the costs and expenses of repairing, replacing, or otherwise remedying the defective electrical connector on the water pump;

i. Whether Defendant is obligated to inform Class Members of their right to seek reimbursement for having paid to diagnose, repair, or replace their defective electrical connector on the water pump;

j. Whether Defendant breached the implied warranty of merchantability pursuant to state law and/or the UCC;

k. Whether Defendant is liable for fraudulent omission;

l. Whether Defendant was unjustly enriched;

m. Whether Plaintiff and the other Class Members are entitled to damages and other monetary relief.

## CAUSES OF ACTION

### COUNT I
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

44. Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

45. Plaintiff brings this count on behalf of himself and the Classes.

46. Defendant is a merchant and was at all relevant times involved in the distributing, warranting, and/or selling of the Class Vehicles.

47. The Class Vehicles are "goods" under the relevant laws, and Defendant knew or had reason to know of the specific use for which the Class Vehicles, as goods, were purchased.

10

48.     Defendant entered into agreements with consumers to sell the Class Vehicles to be used by Plaintiff and Class Members for personal use.

49.     The implied warranty of merchantability included with the sale of each Class Vehicle means that Defendant guaranteed that the Class Vehicles would be fit for the ordinary purposes for which cars are used and sold and were not otherwise injurious to consumers. The implied warranty of merchantability is a critical part of the basis for the benefit of the bargain between Defendant, Plaintiff, and the Class Members.

50.     Defendant breached the implied warranty of merchantability because the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation. After all, Defendant did not indicate that the Class Vehicles would contain a defective electrical connector on the water pump.

51.     Given that Plaintiff and Class Members are unable to safely drive the Class Vehicles without risk of the Class Vehicles catching on fire, the Class Vehicles are not fit for their particular purpose of legal transportation and usage. Defendant's Recall does nothing to truly address this risk, given that there is no explanation on the cause of the Defect. Rather, the Recall places Plaintiff in a much worse bargaining position compared to if Defendant's had properly manufactured, designed, produced, distributed, and advertised Class Vehicles.

52.     Defendant's warranty expressly applies to the purchaser of the Class Vehicles, creating privity between Defendant and Plaintiff and Class Members.

53.     Privity is not required because Plaintiff and Class Members are the intended beneficiaries of Defendant's warranties and sales.  Defendant's warranties were designed for and intended to benefit the consumer only, including Plaintiff and Class Members.

54.     Defendant provided sufficient notice of its breaches of implied warranties

11

associated with the Class Vehicles. Defendant was put on actual notice of its breach though the contract between Plaintiff, Class Members, Defendant, and its review of consumer complaints.

55. Had Plaintiff, Class Members, and the consuming public known that the Class Vehicles would have a defective electrical connector on the water pump that created a fire hazard that could engulf the Class Vehicles in flames at any time, they would not have purchased the Class Vehicles or would have paid less for them. To reiterate, had Plaintiff and Class Members known of the defective electrical connector on the water pump, they would not have purchased Class Vehicles.

56. As a direct and proximate result of the foregoing, Plaintiff and the Classes suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest, and fees, including attorneys' fees, as allowed by law.

57. Plaintiff suffered injury in that he purchased a vehicle that is worthless. For all intents and purposes, Plaintiff's vehicle is now a notoriously unsafe vehicle which could catch fire at any time, while in park or while driving.

58. Plaintiff also suffered economic loss in reference to the value of his vehicle. As a result of Defendant's Recall, Plaintiff's vehicle resale value is now diminished. When Plaintiff intends to sell his Vehicle, the reputation of being a faulty vehicle will harm the resale value and place Plaintiff in a much worse bargaining position compared to if Defendant had properly manufactured, designed, produced, distributed, and advertised Class Vehicles.

59. Plaintiff has suffered damages in that Plaintiff has been inconvenienced by Defendant's Recall and accompanying required repairs. As discussed above, Plaintiff will spend hours upon hours tending to Defendant's recall. Had Defendant produced a vehicle that was roadworthy and reliable, Plaintiff would not have had to spend hours upon hours of his life tending

12

to this Recall. Plaintiff did not bargain for, or pay for, a vehicle that could catch on fire in park or while driving and which he must park outside due to the risk of fire to his structures such as his garage or home.

## COUNT II
### VIOLATION OF NORTH CAROLINA'S UNFAIR AND DECEPTIVE TRADE PRACTICES ACT ("UDTPA") N.C. GEN. STAT. § 75-1.1

60.     Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

61.     Plaintiff brings this count on behalf of himself and the Classes.

*62.*     Defendant's sale of the Class Vehicles to Plaintiff and Class Members is a consumer transaction within the meaning of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1 *et seq.*

63.     Defendant's ongoing failure to provide the Class Vehicles as advertised violated the UDTPA in at least these respects:

      a.  Defendant's acts and practices constitute misrepresentations that its Class Vehicles had characteristics which it does not have;

      b.  Defendant misrepresented that its Class Vehicles were of a particular standard or quality when it is of another;

      c.  Defendant's acts and practices constitute the advertisement of goods, without the intent to sell them as advertised;

64.     Defendant's misleading and deceptive advertising, as set forth herein, had the capacity, tendency, or effect of deceiving or misleading consumers and therefore violate the UDTPA.

65.     Defendant's reasonable reliance on these misleading and deceptive advertisements has been the direct and proximate cause of Plaintiff's damages.

66.     By reason of the foregoing, Plaintiff and Class Members have been irreparably

13

harmed, entitling them to injunctive relief, disgorgement, and restitution.

67. Plaintiff has standing under the UDTPA because he suffered economic injury as a result of Defendant's conduct described herein.

68. Under the UDTPA, a prevailing plaintiff may recover compensatory damages and reasonable attorney fees, and Plaintiff here is entitled to an award of both.

<u>COUNT III</u>
**UNJUST ENRICHMENT**

69. Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

70. Plaintiff brings this count on behalf of himself and the Classes.

71. Defendant is, and at all times relevant was, the manufacturers of the Class Vehicles.

72. Plaintiff, and the other members of the Classes, conferred benefits on Defendant in the form of monies paid to purchase Defendant's worthless Class Vehicles.

73. Defendant voluntarily accepted and retained this benefit. Defendant has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiff and the Class members.

74. Because this benefit was obtained unlawfully, namely by selling and accepting compensation for the Class Vehicles without providing working electrical connector on the water pump in the Class Vehicles, it would be unjust and inequitable for Defendant to retain the benefit without paying the value thereof.

75. The circumstances, as described herein, are such that it would be inequitable for Defendant to retain the ill-gotten benefit without paying the value thereof to Plaintiff and the Class Members.

76. Defendant manufactured, marketed, and sold the Class Vehicles under the guise of

14

these Vehicles being safe, operable, and not subject to catching fire at any moment. Instead, Defendant sold vehicles with an inherent fire hazard that could engulf the car in flames at any moment. Rather than refunding or reimbursing Plaintiff and Class members the difference in value related to the diminished resale value, Defendant has offered to simply fix the Class Vehicles with a fix that appears to do no more than replace the defective systems with no guarantee that the root cause of the problem is solved.

77. Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and members of the Classes is unjust and inequitable, Defendant must pay restitution to Plaintiff and members of the Classes for its unjust enrichment, as ordered by the Court.

## COUNT IV
## STRICT LIABILITY: DESIGN DEFECT

78. Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

79. Plaintiff brings this count on behalf of himself and the Classes.

80. At all times relevant, Defendant was engaged in the business of designing, manufacturing, marketing, testing, selling, distributing, and supplying the Class Vehicles and otherwise placed the Class Vehicles in the market and stream of commerce for sale to the consuming public.

81. Plaintiff and Class Members used the Class Vehicles in a reasonably foreseeable manner.

82. At all times, Defendant held final design approval authority for the subject Class Vehicles.

83. The electrical connector on the water pump defect could happen at any time when the improperly sealed electrical connector allows water to collect on the plug connector, causes an

electrical shortage, which could increase the risk of a thermal event and, potentially, a fire.

84.     The Class Vehicles' design is excessively dangerous.  The risk of danger in the Class Vehicles' design and manufacture outweighs any benefit of the design.

85.     Defendant knew or should have known that Plaintiff and the Class Members would purchase and use the Class Vehicles without inspection for defect. Aside from being entirely uncommon for a consumer to disassemble and inspect a vehicle, it is also unlikely to be permitted by Defendant's dealerships and/or other resellers.

86.     As a direct and proximate result of Defendant's conduct, including actions, omissions, and misrepresentations, Plaintiff and the Classes have sustained damages:

    a.   Economic damages due to this Defect as they are now stuck with vehicles that are unsafe and relatively worthless when compared to the purchase price; and

    b.  Noneconomic damages including emotional distress, inconvenience, loss of enjoyment, past and future.

## COUNT V
## STRICT LIABILTY: MANUFACTURING DEFECT

87.     Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

88.     Plaintiff brings this count on behalf of himself and the Classes.

89.     At all times relevant, Defendant was engaged in the business of designing, manufacturing, marketing, testing, selling, distributing, and supplying the Class Vehicles and otherwise placed the Class Vehicles in the market and stream of commerce for sale to the consuming public.

90.     Along with Class Vehicles, Defendant designs, manufactures and produces all sorts of other vehicles. Given Defendant's other vehicles are capable of having an electrical connector on the water pump that isn't improperly sealed and allows water to collect on the plug connector,

cause an electrical shortage, overheat and catch fire, it logically follows that the Class Vehicles would share the same fate.

91.     The Class Vehicles presumably are capable of safe operation as Defendant produces many other vehicles that are capable of such safety and adequate operation.  Unfortunately, this presumption is not reality.  The Class Vehicles are in danger of overheating and catching fire at any moment due to the defective electrical connector on the water pump.

92.     Plaintiff and Class Members used the Class Vehicles in a reasonably foreseeable manner.

93.     At all times, Defendant held final manufacture approval authority for the subject Class Vehicles.

94.     The Class Vehicles' design is excessively dangerous.  The risk of danger in the Class Vehicles design and manufacture outweighs any benefit of the design.

95.     Defendant knew or should have known that Plaintiff and Class Members would purchase and use the Class Vehicles without inspection for defect.  Aside from being entirely uncommon for a consumer to disassemble and inspect a vehicle, it is also unlikely to be permitted by Defendant's dealership and/or other resellers.

96.     As a result of this faulty manufacture of the electrical connector on the water pump, the Class Vehicles are now relatively worthless when compared to their original purchase price and relative value and are unsafe.

97.     Given the loss of value and lack of safety, Plaintiff and Class Members have been damaged and will continue to suffer damages.

**COUNT IV**
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**
**(15 U.S.C. § 2301 *ET SEQ.*)**

17

98. Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

99. Plaintiff brings this count on behalf of himself and the Classes.

100. Plaintiff is a "consumer" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 ET SEQ ("MMWA").

101. Defendant is a "supplier" and "warrantor" within the meaning of the MMWA.

102. The Class Vehicles are "consumer products" within the meaning of the MMWA.

103. 15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

104. Defendant's express warranties are written warranties within the meaning of the MMWA.

105. Defendant breached its warranties by offering for sale and selling the Class Vehicles, which were by design and construction defective and unsafe due to the electrical connector on the water pump defect recall. Defendant's actions subjected Plaintiff and the Classes to danger as well as monetary damages in that the Class Vehicles are inherently worth less compared to their value had the Class Vehicles been free of the electrical connector on the water pump defect.

106. Additionally, Plaintiff and Class Members suffered damages in that they have been greatly inconvenienced by this Recall and Defect as Plaintiff and Class Members have had to collectively spend thousands of hours and thousands of dollars in time and costs related to repairing the electrical connector on the water pump defect.

107. Defendant has breached and continues to breach its written and implied warranties of safety and reliability, thereby damaging Plaintiff and the Classes, when the Vehicles fail to

18

perform due to the Defect.

108.    As a result of these breaches, Plaintiff and Class Members have suffered damages.

109.    Plaintiff and Class Members seek full compensatory, punitive, and consequential damages as allowed by law, and any other relief to which Plaintiff and the Classes may be entitled.

110.    Plaintiff and Class Members suffered injury through Defendant's conduct in that Plaintiff and the Classes are now owners of vehicles that are worth significantly less, given the Defect and the notoriety therein.

111.    Plaintiff and Class Members suffered injury through Defendant's conduct in that Plaintiff and the Classes have, or will have to, spend hours upon hours of their own time, and thousands of dollars in towing fees, in seeking repair for these Class Vehicles.  Regardless of Defendant's free repair, Plaintiff and the Classes are still required to spend hours in time and thousands of dollars in bringing their vehicles to Defendants' dealership for repair.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff, on behalf of himself and members of the Classes, requests that the Court enter judgment in their favor and against Defendant, awarding as follows:

A.   Certifying the Classes as proposed herein, designating Plaintiff as Class representative, and appointing undersigned counsel as Class Counsel;

B.   Declaring that Defendant is financially responsible for notifying the Proposed Class Members of the pendency of this action;

C.   Award all actual, general, special, incidental, statutory, and consequential damages to which Plaintiff and Class Members are entitled;

D.   Scheduling a trial by jury in this action;

E.   Awarding pre- and post-judgment interest on any amounts awarded, as permitted by law;

F.   Costs including reasonable attorneys' fees, court costs, and other litigation expenses; and,

19

G.  Any other relief the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of all those similarly situated, hereby requests a jury trial, pursuant to Federal Rule of Civil Procedure 38, on any and all claims so triable.

Dated: April 7, 2025                     Respectfully submitted,

                                         /s/ Ryan A. Valente
                                         Ryan A. Valente
                                         Paul J. Doolittle(*Pro Hac Vice* forthcoming)
                                         Seth Little Esq.  (*Pro Hac Vice* forthcoming)
                                         **POULIN | WILEY | ANASTOPOULO, LLC**
                                         32 Ann Street
                                         Charleston, SC 29403
                                         Tel: 803-222-2222
                                         Fax:843-494-5536
                                         Email: paul.doolittle@poulinwiley.com
                                                 seth.little@poulinwiley.com
                                                 cmad@poulinwiley.com

                                         -AND-

                                         Philip J. Furia, Esq.
                                         Jason P. Sultzer, Esq.
                                         **SULTZER & LIPARI, PLLC**
                                         85 Civic Center Plaza, Suite 200
                                         Poughkeepsie, New York 12601
                                         Tel: (845) 483-7100
                                         Fax: (888) 749-7747
                                         furiap@thesultzerlawgroup.com
                                         sultzerj@thesultzerlawgroup.com

20